# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| CHARLES DOUGLAS MCDOWELL, an Adult Individual; and THOMAS LEO MULLER, an Adult Individual;<br><br>    Plaintiffs,<br><br>  v.<br><br>GURBIR GREWAL, in his official capacity as Attorney General of New Jersey; and PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police,<br><br>    Defendants. | Hon. Freda L. Wolfson, U.S.D.J.<br>Hon. Douglas E. Arpert, U.S.M.J.<br><br><br>Docket No. 3:20-cv-00433-FLW-DEA<br><br>**CIVIL ACTION**<br><br>**(ELECTRONICALLY FILED)**<br><br>Motion Return Date: June 15, 2020 |

BRIEF IN SUPPORT OF DEFENDANTS GURBIR GREWAL AND
PATRICK J. CALLAHAN'S MOTION TO DISMISS PLAINTIFFS' THIRD
AMENDED COMPLAINT IN LIEU OF ANSWER

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Defendants Gurbir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumalis
973-648-7811
Bryan.Lucas@law.njoag.gov

Joseph C. Fanaroff
Jeremy M. Feigenbaum
Michael C. Walters
Assistant Attorney General
  Of Counsel and On the Brief

Bryan Edward Lucas
Deputy Attorney General
  On the Brief

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF THE CASE...............................................................3

    A. New Jersey's Licensing Regime..............................................3

    B. Plaintiffs' Challenge ...............................................................6

STANDARDS OF REVIEW ...................................................................8

ARGUMENT ..........................................................................................9

POINT I: THIS CASE SHOULD BE DISMISSED FOR LACK OF
JURISDICTION BECAUSE PLAINTIFFS HAVE NOT IDENTIFIED A VALID
CAUSE OF ACTION ..............................................................................9

POINT II: PLAINTIFFS FAILED TO STATE A VALID CLAIM UNDER THE
FULL FAITH AND CREDIT CLAUSE ................................................12

CONCLUSION .....................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page</u>**

*Adar v. Smith*,
  639 F.3d 146 (5th Cir. 2011) ......................................................... 10, 11

*Anglo-Am. Provision Co. v. Davis Provision Co.*,
  191 U.S. 373 (1903) ..............................................................10

*Baker v. GMC*,
  522 U.S. 222 (1998) ..............................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................8

*Brown v. City of Chicago*,
  2020 WL 489522 (N.D. Ill. Jan. 30, 2020) ...........................................12

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
  945 F.3d 1270 (10th Cir. 2019) ....................................................10

*Cahill v. Kendall*,
  202 F. Supp. 2d 1322 (S.D. Ala. 2002) .............................................10

*California ex rel. McColgan v. Bruce*,
  129 F.2d 421 (9th Cir. 1942) ......................................................10

*Commonwealth v. Harris*,
  481 Mass. 767 (Mass. 2019) .......................................................15

*Corcoran v. Sessions*,
  261 F.Supp.3d 579 (D. Md. 2017) ..................................................14

*Culp v. Raoul*,
  921 F.3d 646 (7th Cir. 2019) ......................................................15

*Desi's Pizza, Inc. v. City of Wilkes-Barre*,
  321 F.3d 411 (3d Cir. 2001) .........................................................8

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2014) ...................................................................5

*Fleming v. Cape May* County,
475 F. App'x 811 (3d Cir. 2012) ...........................................................9

*Franchise Tax Bd. of Cal. v. Hyatt*,
538 U.S. 488 (2003)..............................................................................13

*Friedman v. Highland Park*,
784 F.3d 406 (7th Cir. 2015) ...............................................................13

*Hamilton v. Pallozzi*,
848 F.3d 614 (4th Cir. 2017) ...............................................................14

*In re Preis*,
573 A.2d 148 (N.J. 1990) .................................................................4, 5

*Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.*,
607 F.3d 1268 (11th Cir. 2010) .............................................................9

*Minnesota v. Northern Securities Co.*,
194 U.S. 48 (1904)........................................................................ 10, 11

*Moran v. Wis. Dep't of Justice*,
932 N.W. 2d 430 (Wisc. Ct. App. 2019) .............................................14

*New State Ice Co. v. Liebmann*,
285 U.S. 262 (1932)..............................................................................13

*Pacific Employers Ins. Co. v. Industrial Accident Comm'n*,
306 U.S. 493 (1939)..............................................................................13

*People v. Shear*,
71 Cal. App. 4th 278 (Cal. Ct. App. 1999).........................................14

*Peterson v. Martinez*,
707 F.3d 1197 (10th Cir. 2013) ...........................................................15

*Philips v. County of Alleghany*,
   515 F.3d 224 (3d Cir. 2008) ...................................................................8

*Piszczatoski v. Filko*,
   840 F. Supp. 2d 813 (D.N.J. 2012)........................................................4

*Sherrer v. Sherrer*,
   334 U.S. 343 (1948)..............................................................................13

*Siccardi v. State*,
   284 A.2d 533 (N.J. 1971) ...................................................................4, 5

*Sun Oil Co. v. Wortman*,
   486 U.S. 717 (1988)..............................................................................13

*Symczyk v. Genesis HealthCare Corp.*,
   656 F.3d 189 (3d Cir. 2011) ...................................................................8

*Thompson v. Thompson*,
   484 U.S. 174 (1988)..................................................................... 2, 9, 10

*Wisconsin v. Pelican Ins. Co.*,
   127 U.S. 265 (1903)..........................................................................2, 10

## **Statutes**

N.J. Stat. Ann. § 2C:39-5(b) ........................................................................8

14 Del. C. § 1441(j) ...................................................................................16

14 Del. C. 11-1441 .......................................................................................7

14 Del. C. 11-1441(a)(3)...............................................................................7

1905 N.J. Laws, ch. 172 at 324.....................................................................4

28 U.S.C. § 1738 ............................................................................... passim

42 U.S.C. § 1983 ................................................................................. 11, 12

N.J. Stat. Ann. § 2C:39-3g ................................................................................4

N.J. Stat. Ann. § 2C:39-3j .................................................................................3

N.J. Stat. Ann. § 2C:39-5(b) .............................................................................8

N.J. Stat. Ann. § 2C:39-6(a)(1)-(11) .................................................................4

N.J. Stat. Ann. § 2C:39-6(e) .............................................................................3

N.J. Stat. Ann. § 2C:39-6(f) .............................................................................3

N.J. Stat. Ann. § 2C:58-4c ................................................................................5

N.J. Stat. Ann. § 2C:58-4d ...............................................................................5

N.J. Stat. Ann. § 2C:58-4e ...............................................................................5

O.C.G.A. 16-11-126(e) ...................................................................................16

O.C.G.A. 16-11-129 ..........................................................................................6

O.C.G.A. 16-12-123(b) ......................................................................................6

## Rules

Fed. R. Civ. P 12(b)(1)...............................................................................8, 18

Fed. R. Civ. P. 12(b)(6).............................................................................8, 18

N.J. Court R. 2:2-3 ..........................................................................................5

## Other Authorities

Rick Hills, *Firearms, Federalism, and Full Faith & Credit*, July 16, 2017 ..........16

Ralph Whitten, Full Faith and Credit for Dummies,
  38 Creighton Law Review 465 (2005) ...................................................17

## **PRELIMINARY STATEMENT**

This case asks a simple question: whether states like New Jersey are permitted to maintain their own rules governing when someone can publicly carry a weapon, or whether Article IV, Section I of the U.S. Constitution ("the Full Faith and Credit Clause") can be wielded like a sword to prevent officials from enforcing their state's constitutionally-valid laws. But the question is really broader than that. In Plaintiffs' world, because States indisputably must respect and enforce the judgments of other state courts under the Full Faith and Credit Clause, this Court should take a leap to hold that state's licensing regimes must give way to the lowest common denominator among the states—so that if someone has a license to do something in one state (e.g., to own a weapon despite a felony conviction, obtain a professional license under that state's laws, or engage in employment as a minor), they must be able to do the same thing when they travel to any other state, no matter that other state's laws.

There are two defects in Plaintiffs' case. The first is jurisdictional. Although Plaintiffs' Third Amended Complaint ("the Complaint") pleads causes of action under Article IV, Section I of the U.S. Constitution, and its statutory analog, 28 U.S.C. § 1738, neither one confers a private right to sue, and neither one confers subject matter jurisdiction on this Court. Indeed, an unbroken line of Supreme Court precedent dating to the 1880s holds that the Full Faith and Credit Clause is a rule used to guide courts in determining when to honor the decisions of another court in

*ongoing* litigation, and is not an affirmative vehicle through which to *initiate* litigation seeking to enjoin a state official from enforcing his own state's law. *See, e.g.*, *Thompson v. Thompson*, 484 U.S. 174, 182 (1988) ("[T]he Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action."); *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 291-92 (1903) (noting that the Clause "establishes a rule of evidence rather than of jurisdiction"). Because Plaintiffs cannot identify a proper cause of action, and have not identified any jurisdictional basis for this case beyond Article IV, Section I and 28 U.S.C. § 1738, this Court cannot proceed.

Even beyond the straightforward jurisdictional defect, this Complaint reflects a misunderstanding of the Full Faith and Credit Clause, and thus should be dismissed as a matter of law too. While the Full Faith and Credit Clause ensures enforcement of judgments across state laws, each state is of course free to maintain its own laws, including firearm safety laws, within its borders—and need not change those laws simply because another state disagrees. So when a person obtains a license to carry firearms in Georgia, that authorizes them to carry weapons publicly *in Georgia*, and not to do so when they travel to New Jersey. The same, of course, is true in reverse—a New Jersey resident is not *precluded* from carrying weapons in public in Georgia simply because they were denied a license in New Jersey. So too across a range of contexts: were Georgia to allow felons to possess weapons, that felon would not be

2

automatically allowed to buy a gun in New Jersey; were Georgia to allow ten-year-olds to drive cars, that ten-year-old would not be ipso facto entitled to a New Jersey driver's license when his family moves up north; and were Georgia to allow someone to practice law after passing the Georgia bar, New Jersey courts would not have any constitutional obligation to allow that person to practice law in New Jersey. No court has interpreted the Full Faith and Credit Clause in such a sweeping manner, and this Court should reject Plaintiffs' invitation to be the first.

## STATEMENT OF THE CASE

### A.   New Jersey's Licensing Regime

Any New Jersey resident who is over 18 and is not otherwise prohibited from possessing firearms may generally keep and carry a loaded handgun in his or her home or place of business. *See* N.J. Stat. Ann. § 2C:39-6(e) (permitting individuals to "keep[] or carry[] about his place of business, residence, premises or other land owned or possessed by him, any firearm"). Residents can transport their firearm— unloaded and properly secured—to and from any place where they may lawfully keep and carry it. *Id.* New Jersey law also permits members of rifle and pistol clubs to have weapons with them when engaging in actions like traveling to and from target practice and participating in competitive target, trap, or shooting competitions. N.J. Stat. Ann. §§ 2C:39-3j, 2C:39-6(f). Finally, members of the military ("Armed Forces of the United States or of the National Guard"), federal, state, and local law

enforcement, and other denominated groups may all carry firearms while on duty. *Id.* §§ 2C:39-3g, 2C:39-6(a)(1)-(11).

At the same time, for over a century New Jersey has recognized the risks to public safety and to law enforcement that carrying firearms in public can present. *See, e.g.*, *In re Preis*, 573 A.2d 148, 150 (N.J. 1990) (noting New Jersey law "draw[s] careful lines between permission to possess a gun in one's home or place of business . . . and permission to carry" in public). In light of "the known and serious dangers of misuse and accidental use" of weapons, *Siccardi v. State*, 284 A.2d 533, 538 (N.J. 1971), New Jersey has "continually made the reasonable inference that" additional safeguards are necessary for public carrying, *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 835 (D.N.J. 2012). That said, New Jersey has not banned carrying a firearm in public despite the risks; instead, the State has carefully limited public carrying to those individuals with a need to do so.

The history of New Jersey's public carry law stretches back over a century. In 1905, New Jersey enacted its first permitting law, restricting the concealed carrying of firearms to those individuals who had permits to do so. 1905 N.J. Laws, ch. 172 at 324. Starting in 1924, New Jersey began specifically requiring a showing of "need" for individuals wishing to carry a firearm in public. *Siccardi*, 284 A.2d at 553. And while the State has amended its scheme over the intervening 95 years, the fundamental "requirement that need must be shown for the issuance of a permit to

4

authorize the carrying of a handgun" has remained intact. *Id.* at 554. The "justifiable need" standard on which New Jersey relies was incorporated by statute in 1978, N.J. Stat. Ann. § 2C:58-4d, and the law was amended as recently as 2018, see N.J. Stat. Ann. § 2C:58-4c. The law remains in effect today.

Pursuant to its laws, New Jersey applies an "objective standard for issuance of a public carry permit." *Drake v. Filko*, 724 F.3d 426, 434 n.9 (3d Cir. 2014). The law places ultimate responsibility for issuing the public carry permit with a neutral arbiter—a Superior Court judge—after an applicant receives preliminary approval from his or her local police chief or from the Superintendent of the New Jersey State Police. N.J. Stat. Ann. § 2C:58-4d; *In Re Preis*, 573 A.2d at 571. To get approval, that individual must show that he is not subject to any statutory prohibitions, has the requisite knowledge of handling and use of handguns, and "has a justifiable need to carry a handgun." N.J. Stat. Ann. §§ 2C:58-4c, d. The State affords applicants a right of appeal if their application is rejected. *See id.* § 2C:58-4e; N.J. Court R. 2:2-3.

The Third Circuit has previously upheld New Jersey's law as constitutional under the Second Amendment. *See Drake*, 724 F.3d at 433, 437-38 (affirming New Jersey's "justifiable need" standard as fitting "comfortably within the longstanding tradition of regulating the public carrying of weapons for self-defense," and adding that the law advanced the State's interest in public safety, reflected a reasonable way

5

of achieving that goal, and did not restrict more conduct than necessary to achieve the State's interest in protecting its residents).

### B. Plaintiffs' Challenge

Plaintiff Charles McDowell ("McDowell") is a Georgia resident who has been issued a "weapons carry license" in that state. ECF No. 1 at ¶¶1, 33. Under Georgia law, any individual is eligible to obtain such a weapons carry permit unless he or she is disqualified by dint of 1) age; 2) criminal history; 3) revocation of a weapons carry permit in the last 3 years; 4) imposition of "restraint or supervision" within the past 5 years for unlawfully carrying a firearm without a carry license; or 5) hospitalization as an inpatient at a mental health or alcohol and drug treatment center within the past 5 years. *See* O.C.G.A. 16-11-129. Individuals who hold such carry licenses, like McDowell, are allowed to carry their firearm onto any aircraft, bus, or rail vehicle, except where prohibited by federal law. *Id.* at 16-12-123(b). In marked contrast to New Jersey, however, weapons carry licensees are not required by law to undergo any mandatory training. And applicants for a Georgia weapons carry license need not show any form of "need" to obtain the license.

Plaintiff Thomas Muller ("Muller") (collectively, "Plaintiffs") is a Delaware resident who has been issued a license to carry a "concealed deadly weapon" in that state. *Id.* at ¶¶2, 40. Under Delaware law, a person issued a concealed deadly weapon permit can carry their firearm on their person in public. Such permit may be issued

6

provided an applicant meets the statutory requirements, which include certification by five "respectable citizens" that the applicant is *inter alia* "of full age, sobriety, and good moral character" and that he requires the permit to protect himself or his property. 14 Del. C. 11-1441. Prior to receipt of such a permit, an applicant must complete a firearm safety training course. *Id.* at 11-1441(a)(3).

McDowell represents that he has been invited to participate in firearms training courses in New Jersey but has "refrained from entering New Jersey for said training despite his desire to do so" because of New Jersey's "harsh" gun laws. *Id.* at ¶¶35-36. Plaintiff Muller represents that he "desires to travel to New Jersey" but has also refrained from doing so for the same reason. *Id.* at ¶¶42-43. Defendants are Gurbir S. Grewal, in his official capacity as the Attorney General of New Jersey, and Colonel Patrick J. Callahan, in his official capacity as Acting Superintendent of the New Jersey State Police (collectively, "Defendants").[1]

On January 14, 2020, Plaintiffs filed a two-count complaint in the District of New Jersey seeking a declaration that their respective permits to carry firearms be "granted full faith and credit in every court in New Jersey" and that the orders issuing those permits "have the same effect as a 'permit to carry' as identified in [N.J. Stat.

---

[1] Although Plaintiffs' original Complaint (and First and Second Amended Complaints) also named the prosecutors for each of New Jersey's 21 counties in their official capacities, on April 8, 2020, Plaintiffs filed a Third Amended Complaint dismissing them from the case. *See* ECF No. 27.

Ann. § 2C:39-5(b)]." ECF No. 1, Prayer For Relief (a)-(d). Plaintiffs also ask that this Court enjoin Defendants from "arresting and/or prosecuting, under [N.J. Stat. Ann. § 2C:39-5(b)], individuals who have been issued a weapons carry license . . . from any state in the United States." ECF No. 1, Prayer For Relief (f).

Defendants' motion to dismiss follows.

## <u>STANDARDS OF REVIEW</u>

A motion to dismiss under Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. Subject matter jurisdiction is a threshold issue concerning the very power of the court to entertain an action. *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir. 2001). In such cases, the plaintiffs bear the burden of persuasion. *See, e.g.*, *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(6) may be granted if the complaint fails to state a claim upon which relief can be granted. In the context of a Rule 12(b)(6) motion, courts must accept as true the factual allegations in the complaint. *See, e.g.*, *Philips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008). But the complaint must nevertheless contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## **ARGUMENT**

## **POINT I**

## **THIS CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION BECAUSE PLAINTIFFS HAVE NOT IDENTIFIED A VALID CAUSE OF ACTION.**

For this case to proceed in federal court, Plaintiffs must demonstrate that this court has jurisdiction over the causes of action that they raise. Plaintiffs' Complaint relies on two laws—the Full Faith and Credit Clause of the U.S. Constitution and its statutory analog, 28 U.S.C. § 1738, *see* ECF No. 1 at ¶27—but neither supplies this Court with jurisdiction to hear Plaintiffs' claims.

That jurisdictional problem is insurmountable. As the Supreme Court has held repeatedly, "[t]he Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action." *Thompson*, 484 U.S. at 182; *see also Fleming v. Cape May County*, 475 F. App'x 811, 812 (3d Cir. 2012) (agreeing the Full Faith and Credit Clause does not give rise to an implied private cause of action); *Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1278 (11th Cir. 2010) ("[I]t is long established that § 1738 does not, standing alone, confer jurisdiction on a federal court to domesticate a judgment rendered by a court of another jurisdiction.").[2]

---

[2] Even when Congress passes legislation directing states to afford "full faith and credit" to determinations of courts in other states (e.g., in child custody cases), that does not automatically establish a private right of action based on the Full Faith and

Rather, "the Clause 'only prescribes a rule by which courts, federal and state, are to be guided when a question arises *in the progress of a pending suit* as to the faith and credit to be given by the courts to the public acts, records and judicial proceedings of a state other than that in which the court is sitting." *Thompson*, 484 U.S. at 182-83 (emphasis added) (quoting *Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72 (1904)). That does not sap the Full Faith and Credit Clause of force, but it means that the Clause "establishes a rule of evidence rather than of jurisdiction." *Pelican Ins. Co.*, 127 U.S. at 291-92; *see also Anglo-Am. Provision Co. v. Davis Provision Co.*, 191 U.S. 373, 374 (1903) (same); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1275 (10th Cir. 2019) ("Section 1738 is a rule of decision, not of independent jurisdiction."). When there is a pending case in which jurisdiction is proper, the Full Faith and Credit Clause dictates how another state's judicial holdings must be respected, but the Clause and its statutory analog may never be "invoke[d]" to "make a case arising under the Constitution or the laws of the United States" for the purposes of federal jurisdiction. *Minnesota*, 194 U.S. at 72; *see also, e.g.*, *California ex rel. McColgan v. Bruce*, 129 F.2d 421, 424 (9th Cir. 1942) ("Appellant's argument would ask us to hold that any attempt, at any time or place, by any person, to enforce the provisions of any state statute or judgment would

---

Credit Clause. *See Thompson*, 484 U.S. at 183; *Adar v. Smith*, 639 F.3d 146, 155-56 (5th Cir. 2011); *Cahill v. Kendall*, 202 F. Supp. 2d 1322, 1327 (S.D. Ala. 2002).

be, without more, a subject of federal jurisdiction. The authorities will not support so sweeping a pronouncement."). So "[a]bsent an independent source of jurisdiction over such claims, federal courts may not hear such cases." *Adar*, 639 F.3d at 157. That alone requires this Court to dismiss Plaintiffs' case.

That makes sense, because the Full Faith and Credit Clause may not be used as a sword to require executive officials to enforce one state's laws over another's— as Plaintiffs' theory would call for. At least one court has described the idea that the Clause could be used against any official other than a court as "incoherent." *Adar*, 639 F.3d at 154; *see also Minnesota*, 194 U.S. at 72 (noting "the clause has nothing to do with the conduct of individuals or corporations"). That is why courts have also rejected the notion that alleged infringement of the Full Faith and Credit Clause could be shoehorned onto a claim under 42 U.S.C. § 1983 against either state courts *or* non-judicial actors. *See Adar*, 639 F.3d at 151 ("Section 1983 has no place in the clause's orchestration of inter-court comity—state courts may err, but their rulings are not subject to declaratory or injunctive relief in federal courts."); *id.* at 154 n.6 ("If § 1983 provided a remedy for full faith and credit violations by state *executive officials*, litigants in such actions would have a considerable advantage over litigants who pursue recognition of out-of-state judgments through state courts. Whereas the former would have immediate federal court redress through § 1983, the latter would depend on Supreme Court review alone."); *see also Brown v. City of Chicago*, 2020

11

WL 489522 (N.D. Ill. Jan. 30, 2020) ("Given that Section 1983 does not give rise to a private cause of action under the Full Faith and Credit Clause, the Court dismisses Count I of the complaint.").

If Plaintiffs wish to enjoin New Jersey's officials from applying New Jersey law to everyone within its borders, they must identify a different cause of action for that proposition, and they cannot hale New Jersey officials into court based upon the Full Faith and Credit Clause and 28 U.S.C. § 1738 alone.

## POINT II

### PLAINTIFFS FAILED TO STATE A VALID CLAIM UNDER THE FULL FAITH AND CREDIT CLAUSE.

Even putting aside the jurisdictional defect, Plaintiffs' claim fails for another reason—it advances an unprecedented and incorrect understanding of the Full Faith and Credit Clause. Plaintiffs' argument goes like this: since two individuals received a license to carry a firearm in public in their home states under their home state law, they must be allowed to carry a firearm in public in New Jersey, notwithstanding New Jersey's distinct rules governing the public carrying of weapons. Plaintiffs are wrong. Nothing about the Full Faith and Credit Clause requires New Jersey's laws on public carry to give way to another state's dissimilar laws, just as Georgia's laws do not need to give way to New Jersey's.

It is black letter law that "[t]he Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a

subject matter concerning which it is competent to legislate.'" *Baker v. GMC*, 522 U.S. 222, 232 (1998) (quoting *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501 (1939)); *see also id.* ("A court may be guided by the forum State's 'public policy' in determining the law applicable to a controversy."); *Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 494 (2003); *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988). To the contrary, while the Full Faith and Credit Clause ensures that money judgments will continue to run against a party who loses a case in one state and immediately flees to another—an important rule that helped to "transform[] an aggregation of independent, sovereign States into a nation," *Sherrer v. Sherrer*, 334 U.S. 343, 355 (1948)—the Constitution has never been read to eviscerate the states' abilities to maintain distinct laws governing the conduct of individuals within their borders. Just the opposite: the Constitution "does not foreclose all possibility of experimentation [across states]. Within the limits [it] establishe[s] … federalism and diversity still have a claim." *Friedman v. Highland Park*, 784 F.3d 406, 412 (7th Cir. 2015); *see also New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) (describing as one of the "happy incidents of the federal system" that States may "serve as a laboratory" for policies that fit their local needs, and concluding that the "[d]enial [by the courts] of the right to experiment may be fraught with serious consequences to the [n]ation").

It follows directly from that principle that states need not allow individuals to possess or to use weapons in a specific manner merely because they are authorized to do so within another state's borders. *See, e.g.*, *Hamilton v. Pallozzi*, 848 F.3d 614, 628 n.15 (4th Cir. 2017) (rejecting claim by former Virginia resident that Maryland was required to allow him to own a firearm simply because a Virginia court, applying Virginia law, reinstituted his right to possess a firearm after completing his sentences for three felony convictions in Virginia); *Corcoran v. Sessions*, 261 F.Supp.3d 579, 588 n.18 (D. Md. 2017) (a state's "use of its own statutory penalties in determining whether a conviction in another State disqualifies an individual from possessing a firearm in [that state] does not support a claim for violation of the Full Faith and Credit Clause"); *Moran v. Wis. Dep't of Justice*, 932 N.W. 2d 430, 444 (Wisc. Ct. App. 2019) (same, adding that "Wisconsin has substantial interests in the application of its own criminal law and in deciding who is allowed to lawfully possess a firearm within its boundaries."); *People v. Shear*, 71 Cal. App. 4th 278, 289 (Cal. Ct. App. 1999) (permitting former resident of Arizona to be convicted of firearm possession by a felon in California even though his right to possess a weapon had been restored under Arizona's distinct law). Simply put, States may take different approaches to firearm safety, and need not acquiesce to the lowest common denominator.

By the same token, courts have held, states may take different approaches to the public carrying of weapons, and so New Jersey is not required to allow a resident

14

to carry a weapon in public when they cannot meet New Jersey's statutory rules. *See, e.g.*, *Commonwealth v. Harris*, 481 Mass. 767, 774-76 (Mass. 2019) (rejecting claim by former New Hampshire resident charged with unlawful possession of a firearm that Massachusetts was obligated to accord full faith and credit to his New Hampshire concealed carry permit).[3] As one scholar aptly explained, the contrary result would be untenable as a matter of practice:

> Pause for a moment to imagine the strangeness of such a choice-of-law regime. Two people carry identical handguns into Times Square. One person is from Texas, where oversight of concealed firearms is minimal. The other is a New York resident, where the right to a "concealed carry" permit is much more restricted. Under [Plaintiffs' rule], the Texan would be absolved of the normal duty to comply with the penal laws of the territory where she is present: She would carry Texas's [public carry law] with her like a little personal rain cloud floating over her head. The New Yorker would still have to obey New York law. In effect, two sets of criminal laws would vie with each other on precisely the same street corner. The NYPD could collar their own resident for illegal possession but would have to let the Texan go.

Rick Hills, *Firearms, Federalism, and Full Faith & Credit*, July 16, 2017, available at https://prawfsblawg.blogs.com/prawfsblawg/2017/07/firearms-federalism-and-full-faith-credit-can-congress-subject-everyone-to-the-concealed-carry-laws-.html.

---

[3] Other courts have upheld state laws imposing additional restrictions or prohibiting the issuance of concealed carry permits to out-of-state residents regardless of their eligibility for such permits in their home states. *See, e.g.*, *Culp v. Raoul*, 921 F.3d 646 (7th Cir. 2019); *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013).

Substitute "New York City" with New Jersey, and "Texas" for Georgia or Delaware, and that perfectly describes the problems with this case.

Nor does New Jersey exclusively benefit from this rule, which would respect the right of Georgia and Delaware—and any other state—to set the relevant laws in their jurisdictions, too. Indeed, if a state court denies a New Jersey resident's public carry license application because the New Jersey resident cannot meet the standard *set by New Jersey law*, that would in no way preclude the same person from getting a license to carry a weapon in public under Georgia or Delaware law when they later move to either of those states. Nor would Georgia or Delaware have to recognize a New Jersey resident's public carry license, which—under their current laws—they do not. *See* O.C.G.A. 16-11-126(e) & 14 Del. C. § 1441(j) (granting reciprocity only to out-of-state carry licenses from states that acknowledge permits from Georgia and Delaware). Taken seriously, Plaintiffs' arguments would require all states to respect the grant or denial of such license in another state.

Nor would the absurdities stop at the public carry context. By Plaintiffs' logic, if a dangerous felon is entitled in one state to possess guns—and gets an order from a court confirming his right to do so *under that state's laws*—that felon must also be allowed to own weapons if he moves to New Jersey, no matter New Jersey's felon-in-possession laws. And beyond the context of firearms, Plaintiffs' theory suggests that "if State Y decided to issue driver's licenses to ten-year olds, all other states

16

would also have to allow State Y ten-year old licensees to drive within their borders as a matter of full faith and credit. These examples could be multiplied infinitely." *See* Ralph Whitten, Full Faith and Credit for Dummies, 38 Creighton Law Review 465, 477 (2005); *see also id.* (describing concealed carry reciprocity as an example of a misreading of the Full Faith and Credit Clause). The same, it appears, would hold true for professional licenses, including law licenses—it logically follows from Plaintiffs' theory that whoever gets a license in one state would be able to maintain it in another, no matter the latter state's distinct requirements for practice.

The reason why this cannot be the law under the Full Faith and Credit Clause is simple. When an individual gets a license (including a public carry license) from a state, the license is an authorization to take certain actions—whether carrying a gun or practicing law—within that state. While those licenses warrant preclusive effect, meaning that a New Jersey court could not question whether some individual has the right to carry a weapon *in Delaware or Georgia* after the courts of those states have issued judgments to that effect, it does not mean New Jersey must allow them to take the same actions within its borders. After all, a Delaware court lacks the power to authorize someone to carry a weapon in New Jersey under New Jersey law, and a Pennsylvania court lacks the power to authorize someone's practice of law in New Jersey, so there is no basis to conclude that such courts are in fact issuing licenses that sweep so broadly, nor that any such licenses would be valid. New

17

Jersey's penal laws, including its public carry statutes, may thus be validly applied to anyone within its borders, notwithstanding Plaintiffs' claims to the contrary.

## **CONCLUSION**

Plaintiffs' Complaint must be dismissed with prejudice pursuant to both Rule 12(b)(1) and Rule 12(b)(6).


Dated: May 18, 2020                    Respectfully Submitted,

                                       GURBIR S. GREWAL
                                       ATTORNEY GENERAL OF NEW JERSEY

                                       By: /s/ Bryan Edward Lucas

                                       Joseph C. Fanaroff
                                       Jeremy M. Feigenbaum
                                       Michael C. Walters
                                       Assistant Attorneys General
                                         Of Counsel and On the Brief

                                       Bryan Edward Lucas
                                       Deputy Attorney General
                                         On the Brief